Richard Morin (SBN 285275)
Law Office of Rick Morin, PC
500 Newport Center Drive Suite 610
Newport Beach, CA 92660
Phone: (949) 996-3094
Email: legal@rickmorin.net

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| Lee Dozier, | Case No. |
|---|---|
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | |
| Vintage Plaza Properties, a California General Partnership, | **Jury Trial Demanded** |
| Defendant. | |

Plaintiff Lee Dozier ("Plaintiff") alleges the following:

**INTRODUCTION**

1. Plaintiff brings this action against Defendant Vintage Plaza Properties, a California General Partnership ("Defendant"), for unlawfully discriminating against Plaintiff because of his disability at the commonly known address 3250 Dale Road in Modesto, California ("Property") where the Velvet Creamery is located ("Velvet Creamery").

2. Plaintiff seeks damages, injunctive, and declaratory relief, attorney's fees and costs pursuant to the Americans with Disabilities Act of 1990 ("ADA") and related California statutes

**PARTIES**

3. Plaintiff is a natural person. At all times relevant to this Complaint, Plaintiff is and has been considered disabled.

4. Defendant is a California general partnership. Defendant owned and/or operated and

currently owns and/or operates the Property, at which Velvet Creamery operates.

## JURISDICTION

5. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. 1331 and 1343 for violations of the Americans with Disabilities Act of 1990.

6. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California law.

## VENUE

7. Venue is proper in this court pursuant to 28 U.S.C. 1391 and is founded on the fact that the Property is in this district and that Plaintiff's claims arose in this district.

## FACTUAL ALLEGATIONS

8. Plaintiff is 80 years old.

9. Plaintiff's wife suffered from a stroke earlier this year and Plaintiff spends a large amount of his time caring for his wife.

10. Plaintiff is disabled. He used to work in construction building houses.

11. Construction work can cause a disability over time. One way is through repetitive strain injuries, which can occur when a person performs the same task over and over again, such as using a tool or lifting heavy objects. This can lead to pain and stiffness in the joints and muscles, and can eventually lead to a loss of function in the affected body part. Construction work can be physically demanding, and can put a lot of strain on the body. And this can lead to injuries such as sprains and strains, and can increase the risk of developing chronic conditions such as back pain or arthritis.

12. Plaintiff's past construction work took a toll on his body. As a result, Plaintiff has significant mobility issues, including a bad back.

13. Plaintiff utilizes a ride-on scooter to help get around on a day-to-day basis when he finds it otherwise too difficult to walk on his own.

14. Plaintiff's symptoms limit, some substantially, his major life activities.

15. A bad back can substantially limit a person's major life activities by making it difficult for them to engage in physical activities and maintain a good quality of life. For example, if a person

has chronic back pain, it can make it difficult for them to perform physical activities, such as walking, standing, or lifting objects. This can make it difficult for them to engage in activities that require physical exertion, such as sports or exercise, and can limit their ability to participate in activities that they enjoy.

16. Furthermore, a bad back can also cause emotional and mental distress. Chronic pain can lead to feelings of frustration, anxiety, and depression, which can affect a person's overall quality of life.

17. Plaintiff utilizes a ride-on scooter to help get around on a day-to-day basis when he finds it otherwise too difficult to walk on his own.

18. In December of 2022, Plaintiff visited the Property to dine at Velvet Creamery. Plaintiff was astonished to find that Defendants did not provide appropriate accessible parking spaces in compliance with the applicable ADA regulations and California law.

19. Plaintiff noted that the accessible parking space is less than 9 feet wide. Moreover, the access aisle seemed to have steep slopes that Plaintiff believes are greater than 2%.

20. Plaintiff also noted that the path of travel from the accessible parking space to the restaurant entry is less than 48 inches wide. The path of travel is obstructed by the car overhang and bushes.

21. It is important that a commercial property have disabled access parking spaces that are large enough and are not too steep because it ensures that people with disabilities are able to park safely and easily.

22. In addition, ensuring that the slopes are not too steep helps to make the spaces more accessible for people with mobility issues. People who use wheelchairs or other assistive devices may have difficulty accessing parking spaces that are difficult to navigate or that are not level.

23. Overall, having disabled access parking spaces that are easy to navigate is important because it helps to ensure that people with disabilities are able to park safely and easily, and can access the commercial property without difficulty.

24. Plaintiff also noted that the entry door to the Velvet Creamery seemed to require a lot of force to operate and believes it require more than 5 pounds of effort.

25. It is important that a door not require too much force to open for someone who is in a sit-on scooter because it ensures that they are able to access the space without difficulty.

26. People with mobility issues, such as those who use a sit-on scooter, may have limited strength and dexterity in their arms and hands. If a door requires too much force to open, it may be too difficult for them to open it. It may also be difficult for the person to maneuverer and exert that much force from his or her sit-on scooter. This can make it difficult for them to access the space and can prevent them from participating in activities or accessing services that are available in that space.

27. Additionally, requiring too much force to open a door can also be a safety issue. If a person is unable to open the door because it requires too much force, they may become trapped in a space or be unable to evacuate quickly in the case of an emergency.

28. Overall, it is important that doors not require too much force to open for people with mobility issues because it ensures that they are able to access the space and participate in activities without difficulty and it helps to ensure their safety.

29. The lack of accessible parking and heavy door caused difficulty and discomfort to Plaintiff.

30. Plaintiff's mobility limitations make it very difficult for Plaintiff to travel long distances. Plaintiff relies on properly configured and conveniently placed accessible parking to run his daily errands for himself and his severely ill spouse.

31. Plaintiff has been to this location numerous times in the past and intends to return again in the future.

32. Plaintiff lives less than 2 miles away from the Property.

33. Velvet Creamery and the Property are public accommodations and business establishments.

34. The Property is believed to have undergone construction and/or alterations, structural repairs, or additions since July 1, 1970 and/or July 1, 1982.

35. Because of barriers at the Property, Plaintiff's access to the facilities, goods, and services at the Property and Velvet Creamery was hampered, causing him difficulty, discomfort, and embarrassment.

36. Plaintiff is hesitant to visit the Property again until such time that Defendant brings the Property into compliance with the ADA.

37. Plaintiff has suffered and continues to suffer violations of his civil rights to full and equal enjoyment of goods, services, facilities, and privileges, and has suffered and will suffer embarrassment and humiliation.

## FIRST CAUSE OF ACTION

Violations of the Americans with Disabilities Act

42 U.S.C. § 12101, et seq.

Against all Defendants

38. Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

39. Defendant has denied Plaintiff full and equal enjoyment and use of the goods, services, facilities, privileges, and accommodations of Defendant's Property and the Velvet Creamery.

### Failure to Remove Architectural Barriers at an Existing Property

40. Defendant has failed to remove architectural barriers, which are structural in nature, where it is reasonably achievable, without much difficulty or expense, and the cost of removing the architectural barriers does not exceed the benefits under these particular circumstances.

41. For those barriers where it is not reasonably achievable to remove them, if any, Defendant has failed to make the goods, services, facilities, or accommodations available through alternative methods that are readily achievable.

### Failure to Design and Construct an Accessible Property

42. The improvements on the Property where the Velvet Creamery is located are believed to have been designed and constructed, or both, after January 26, 1993, independently triggering access requirements under Title III of the ADA.

43. Defendant violated the ADA by failing to design and construct the facilities on the Property and at the Velvet Creamery in a manner that was readily accessible to the physically disabled public, including Plaintiff, when it was structurally practical to do so.

//

<u>Failure to Make an Altered Facility Accessible</u>

44. Plaintiff believes and alleges that the Property was modified after January 26, 1993, independently triggering access requirements under the ADA.

45. The ADA requires properties altered in a manner that affects or could affect its usability be made easily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

46. Defendant altered the Property in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – the maximum extent possible.

<u>Failure to Maintain Accessible Features</u>

47. Defendant violated the ADA by failing to maintain in operable and working condition those features of the Property that are required to be readily accessible to and be usable by persons with disabilities.

48. Defendant's failure in maintaining the Property in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

49. The configuration and condition of Defendant's Property denied Plaintiff a public accommodation due to Plaintiff's disability.

50. It is readily achievable for Defendant to remove the architectural barriers.

51. Defendant does not have any legitimate business justification to excuse the condition and configuration of the Property.

52. Defendant's violations are the cause of suffering for Plaintiff.

53. Plaintiff prays for all relief available under the ADA, including injunctive relief that prohibits violations complained of herein, which have the effect of wrongfully excluding Plaintiff and other members of the public who are physically disabled from full and equal access to these public facilities, as well as attorney's fees, costs, and other expenses for these violations.

//
//
//
//

## SECOND CAUSE OF ACTION

Violations of the Unruh Civil Rights Act

California Civil Code §§ 51-53

Against all Defendants

54. Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

55. As described above, Defendant intentionally discriminated against Plaintiff during his visit to the Property.

56. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code 51(f).

57. Defendants' acts and omissions are in violation of the Unruh Civil Rights Act, and have denied to Plaintiff his rights to "full and equal accommodations, advantages, facilities, privileges or services in all business establishments of every kind whatsoever."

58. Plaintiff was harmed.

59. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

60. As a result of the violation of Plaintiffs civil rights, Plaintiff is entitled to the rights and remedies of California Civil Code § 52, including a trebling of actual damages, minimum statutory damages, as well as reasonable attorneys' fees and costs, as allowed by statute, according to proof.

61. Plaintiff also seeks to enjoin Defendants from violating disabled persons' rights.

62. Although the plaintiff encountered frustration and difficulty by facing discriminatory barriers, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this modest physical personal injury greater than the amount of the statutory damages.

## PRAYER

Plaintiff hereby prays for the following:

1. Injunctive relief compelling Defendant to cease the discrimination against disabled persons and remove all accessibility barriers that relate to Plaintiff's disability;

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense;

3. Attorney's fees pursuant to 42 U.S.C. 12205, Civil Code sections 52, 54 and/or Code of Civil Procedure section 1021.5, expenses, and costs of suit;

4. Other relief that the court deems appropriate.

Dated: December 16, 2022

Law Office of Rick Morin, PC

_____
Richard Morin
Bryce Fick
Attorneys for Plaintiff